```
1  TUCKER ELLIS & WEST LLP
   EVAN C. NELSON – STATE BAR NO. 172957
2  TIMOTHY C. CONNOR - STATE BAR NO. 236529
   135 Main Street, Suite 700
3  San Francisco, California 94105
   Telephone: (415) 617-2400
4  Facsimile: (415) 617-2409
   Email: evan.nelson@tuckerellis.com
5  Email: timothy.connor@tuckerellis.com

6  Attorneys for Defendant
   RELIANCE ELECTRIC COMPANY
7
```

ORIGINAL FILED
E-filing   JUL - 9 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 08   3316   JCS

HARRY LEMASTER and CAROLYN LEMASTER,

Plaintiffs,

v.

ALLIS-CHAMLERS CORPORATION PRODUCT LIABILITY TRUST, et al

Defendants.

Case No.

DEFENDANT RELIANCE ELECTRIC COMPANY'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(a)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF FEDERAL OFFICERS)

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

Defendant RELIANCE ELECTRIC COMPANY (hereinafter referred to as "RELIANCE") hereby gives notice of the removal of the above-entitled action from the Superior Court of the State of California in and for the County of San Francisco, to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1442(a)(1). In support of its removal, RELIANCE respectfully offers the following:

**Preliminary Matters**

1. On or about May 21, 2008, Plaintiffs filed a Complaint in this action, bearing Case No. CGC-08-274669, against RELIANCE and numerous other defendants in the Superior Court of the State of California for the County of San Francisco. A true and correct copy of the Complaint and all state court pleadings served on RELIANCE are attached hereto as Exhibit A.

2. The Complaint alleges that Plaintiff Harry LeMaster's disease was caused by his exposure to asbestos-containing products while working at several locations, including work performed as an Electrician's Mate in the U.S. Navy from 1956-1959 and work as a welder for the U.S. Department of Defense from 1968-1995. Plaintiff's Responses to Standard Asbestos Case Interrogatories, Set One further allege that Plaintiff specifically worked with RELIANCE controllers and switchgear while in the Navy from 1956-1959 and while working for the Department of Defense from 1968-1995. A true and correct copy of the Plaintiff's Responses to Standard Asbestos Case Interrogatories, Set One is attached hereto as Exhibit B.

3. Any and all equipment produced by RELIANCE for the United States Navy was specifically designed and manufactured in accordance with specifications established and maintained by the United States Navy and was designed and built under the direction and control of the United States Government and its officers. Accordingly, this case is removable on the ground of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

4. The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when defendant receives a copy of the initial pleading setting forth the claim for relief upon which such action is based. 28 U.S.C. § 1446(b). On June 10, 2008, Plaintiffs electronically served Responses to Standard Asbestos Case Interrogatories on RELIANCE. The receipt of these Interrogatory Responses put RELIANCE on notice for the first time that the claims that are the basis of this matter as to RELIANCE, involve Plaintiff Harry LeMaster's alleged exposure to asbestos through his interactions with RELIANCE equipment manufactured for the United States Government pursuant to specifications provided by the United States Navy and under the direction and control of the United States Government and its officers. Pursuant to 28 U.S.C. §

1446(b), this Notice of Removal is being filed within thirty days of receipt by RELIANCE of the first paper from which RELIANCE ascertained that this case is removable. Thus, this Notice of Removal has been timely filed.

### Nature of the Case

5. The case is based on allegations that plaintiff Harry LeMaster suffers from an asbestos-related injury caused by his exposure to asbestos-containing products.

6. Plaintiff Harry LeMaster asserts claims against RELIANCE for Negligence, Strict Liability, and False Representation.

7. Plaintiff Carolyn LeMaster asserts claims against RELIANCE for Loss of Consortium.

### Jurisdiction, Venue and Intradistrict Assignment

8. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) as set forth below under Grounds for Removal.

9. Venue is proper in the San Francisco Branch of the Northern District of California as the state court action, which is subject to this removal petition, was filed in the Superior Court of California for the County of San Francisco where it was alleged a substantial part of the events giving rise to plaintiffs' claims herein occurred, and all parties are subject to personal jurisdiction in this District.

10. Furthermore, §1442(a) authorizes such a removal without the consent of any other defendant. *See Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1314-1315 (9th Cir. 1981) ("federal officer…can remove without other defendants joining the petition, and the entire case is removed to the federal court.").

### Grounds for Removal

11. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, and is removable to this Court by RELIANCE pursuant to the provisions of 28 U.S.C. § 1442(a)(1) in that it is a civil action in which plaintiffs' alleged right to relief necessarily depends on the resolution of a substantial question of federal law.

12. At all relevant times, RELIANCE is a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal. 1992) (finding that a corporate defendant was a "person").

13. RELIANCE was acting under the direction of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1) in designing, manufacturing and supplying motors controls and switchgear for and to the United States Navy and/or Military. Motors, controllers and switchgear manufactured for use on United States Navy vessels were required to strictly comply with reasonably precise specifications in the form of Military Specifications (MilSpecs) and/or the military approval process. *See Declaration of Thomas F. McCaffery* ¶ 8 attached hereto as Exhibit C. Before a manufacturer such as RELIANCE received authorization to manufacture or supply machinery such as motors or related equipment such as controllers or switchgear for/to the U.S. Navy, all of the drawings, plans, technical manuals and other design documentation first had to be inspected and approved by the U.S. Navy. *Id.* at ¶ 10. Thus, RELIANCE has a colorable federal defense to plaintiffs' state tort claims.

14. Should plaintiffs file a motion to remand this case, RELIANCE respectfully requests an opportunity to respond more fully in writing, but offers the following authorities at this time:

15. Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (a) demonstrate that it acted under the direction of a federal officer, (b) raise a colorable federal defense to plaintiffs' claims, and (c) demonstrate a causal nexus between plaintiffs' claims and the acts it performed under color of federal office. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D.Cal. 1992); *Machnik v. Buffalo Pumps, Inc.*, 506 F.Supp.2d 99, 102 (D.Conn. 2007). Here, RELIANCE has satisfied all three requirements and is entitled to the federal officer removal provision.

a) RELIANCE was acting under the direction of agents and officers of the United States Government within the meaning of 28 U.S.C. § 1442(a)(1) in designing,

manufacturing and supplying motors, controls and switchgear pursuant to specifications and designs prepared, drafted and issued exclusively by the United States Navy. See Exhibit C *Declaration of Thomas F. McCaffery*. United States Naval Machinery Inspectors were stationed on site at manufacturing facilities to inspect and test this equipment during each phase of the manufacturing process. *Id.* at ¶ 11. The U.S. Navy had direct and detailed control over every aspect of the design and manufacture of the RELIANCE motors, controls, and switchgear. The Navy required use of many different components and materials that comprised an electric motor or controller or switchgear. *Id.* at 12. Each sub-component was designed and manufactured in accordance with similarly precise specifications, standards and, design reviews which also specifically required the precise type of material to be used in these components. *Id.* Where the specifications or standards permitted the manufacturer to choose between two or more types of materials (such as plastic materials or electrical insulation materials), the contractor's choice was subject to specific Navy review and approval. *Id.* If a component on a piece of naval equipment, such as a Reliance Electric motor, controller or switchgear, was actually installed onboard a U. S. Naval vessel, then that component and the material composition of that component complied with the precise specifications, standards and design requirements that the Navy required for such a component. *Id.* at 14. In fact, if any material, feature or component of the equipment failed to comply with the applicable military specifications, then it would have been rejected by the Military. *Id.,* at ¶ 11. RELIANCE was truly acting under the direction of a federal officer because every facet of the design and manufacture of any piece of equipment supplied by Reliance Electric to the U.S. Navy was controlled by the U.S. Navy. *Id.* at 15.

b) RELIANCE raises a colorable federal defense to this action under military contractor immunity in that the United States Navy, controlled the design and manufacture of

any motors and controls produced for the United States Navy. *Id.* at ¶ 12. The designs and specifications for all RELIANCE motors and controls intended for use by the United States Navy were approved by the appropriate Navy personnel. *Id.* at 11. To the extent that any piece of equipment supplied by RELIANCE to the U.S. Navy contained asbestos, it would have been specifically required or approved by the Navy through the MilSpec and design approval process. *Id.* at ¶ 12. The specifications applicable to motors for use onboard United States Naval vessels include, but are not limited to, MIL-M-1940, MIL-M-17059, MIL-M-17060, MIL-M-17413, MIL-M-17556, and MLL-G-18474. *Id.* at 8. The specifications applicable to motor controllers, circuit breakers, rheostats and similar electrical components include, but are not limited to, MIL-C-1938, MIL-C-1939, MIL-R-2033, MIL-C-2174, MIL-C-2212, MIL-R-15109 and MIL-C-17361. *Id.* Finally, the overall design of electrical systems for naval shipboard use was controlled by a separate specification MIL-E-917. *Id.* If a component in motors, controllers or switchgears contained asbestos, then the Navy approved the inclusion of asbestos in that component in one form or another. *Id.* at 14. Given the breadth of experience of the United States Navy in the realm of industrial hygiene, a company such as RELIANCE would not have had the same level of sophisticated, state of the art knowledge concerning potential asbestos hazards as the Navy. *Id.* at ¶ 16.

c) A causal nexus exists between Plaintiffs' claims in this action and the acts taken by RELIANCE under the direction of federal officers. Plaintiffs' claims against RELIANCE arise from plaintiff Harry LeMaster's work as an Electrician's Mate while in the U.S. Navy from 1956-1959. The equipment that Plaintiff allegedly worked with was designed and manufactured pursuant to precise military specifications provided by the U.S. Navy and was built under the detailed and direct control of federal officers. *Id.* at 11. RELIANCE's actions, then, are inseparable from the government specifications, regulations, and oversight, and a clear causal

nexus exists between plaintiffs' claims and RELIANCE's acts performed under color of federal office. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510 (1988); *Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587 (N.D. Cal. 1993); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992); *Pack v. AC and S, Inc.* 838 F. Supp. 1099 (D. Md. 1993); *Crocker v. Borden* 852 F.Supp. 1322 (E.D. La. 1994); *Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998).

16. Plaintiffs' claims against RELIANCE are affirmatively barred by government contractor immunity as set forth by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510 (1988), and by the Ninth Circuit Court of Appeals in *McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir. 1983). Pursuant to this federal defense, military equipment manufacturers, such as RELIANCE, cannot be held liable under state law for any injuries caused by the equipment it built for the U.S. Navy or Military when: (a) the United States approved reasonably precise specifications; (b) the equipment conformed to these specifications; and (c) the equipment supplier warns the military about any hazards involved in the use of the equipment that are known to the equipment supplier but not known to the military. See *Boyle*, 487 U.S. 500 at 512; *McKay*, 704 F.2d. 444 at 451.

17. Analyzing the *Boyle/McKay* factors with the facts above shows (a) that RELIANCE designed and manufactured equipment pursuant to precise specifications provided and approved by the U.S. Navy, (b) the equipment conformed to those specifications, and (c) the United States Military was aware of potential health hazards of working with or around asbestos-containing materials and possessed greater knowledge than RELIANCE of the same. *Declaration of Thomas F. McCaffery*, Exhibit C, ¶ 16. RELIANCE has more than a colorable federal defense to this state action under government contractor immunity. See *Boyle*, 487 U.S. at 512. See also *Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587 (N.D. Cal. 1993); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992); *Pack v. AC and S, Inc.* 838 F. Supp. 1099 (D. Md. 1993); *Crocker v. Borden* 852 F.Supp. 1322 (E.D. La. 1994); *Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998).

18. The existence of a single removable claim allows removal of the entire action. 28 U.S.C. § 1441(c). *National Audubon Society v. Dept. of Water,* 496 F.Supp. 499, 509 (E.D. Cal. 1980).

19. Notice of this removal has been filed with the state court and provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).

20. This removal is based on this Notice of Removal to the United States District Court, the Certificate of Service of Notice to Adverse Party of Removal, the Notice to Adverse Party of Removal filed in the state court action, the Tag-Along Pleading filed herewith, the complete file in the state court case, and any other matters which the court deems applicable.

WHEREFORE, defendant RELIANCE prays that this action be removed from the Superior Court of the State of California in and for the County of San Francisco to the United States District Court for the Northern District of California, and transferred to the United States District Court, Eastern District of Pennsylvania, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 ("MDL Transfer Order").

DATED: July 9, 2008

TUCKER ELLIS & WEST LLP

By: _____
Evan C. Nelson
Timothy C. Connor
Attorneys for Defendant
RELIANCE ELECTRIC COMPANY