TUCKER ELLIS & WEST LLP
EVAN C. NELSON - STATE BAR NO. 172957
TIMOTHY C. CONNOR - STATE BAR NO. 236529
135 Main Street, Suite 700
San Francisco, California 94105
Telephone:  (415) 617-2400
Facsimile:  (415) 617-2409
Email: evan.nelson@tuckerellis.com
Email: timothy.connor@tuckerellis.com

Attorneys for Defendant
RELIANCE ELECTRIC COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY LEMASTER and CAROLYN LEMASTER,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ALLIS-CHALMERS CORPORATION PRODUCT LIABILITY TRUST, et al<br><br>　　　　Defendants. | Case No. **C 08-3316 PJH**<br><br>**DEFENDANT RELIANCE ELECTRIC COMPANY'S OPPOSITION TO MOTION TO REMAND**<br><br>Date:  September 17, 2008<br>Time:  9:00 a.m.<br>Dept.: 3, 17th Floor |

## I. STATEMENT OF FACTS

Plaintiffs Harry LeMaster and Carolyn LeMaster ("Plaintiffs") filed a complaint in San Francisco County Superior Court on May 21, 2008, naming Reliance Electric Company ("Reliance") and numerous other defendants and claiming that he suffers from an asbestos-related injury due to his occupational and non-occupational exposure to asbestos.  The complaint was not specific regarding what Reliance products were allegedly at issue in the action.  On June 10, 2008, Plaintiffs served interrogatory responses that for the first time alleged that Reliance defectively designed (and failed to warn regarding such defects) motors and/or components of motors supplied to the United States Navy that exposed Plaintiff Harry LeMaster to asbestos while he served in the military from February 1, 1956 through July 14, 1959.

     Plaintiffs served the interrogatory responses on June 10, 2008. Reliance removed the case to federal court on July 9, 2008. Reliance removed the case pursuant to 28 USC § 1442(a)(1) "federal officer removal" for evaluation of its military contractor immunity defense in a federal forum. Plaintiffs filed a motion to remand this matter, which Reliance opposes herein.

## II. STATEMENT OF ISSUES

Plaintiffs' Memorandum raises the following issues:

1) The standard under which the Court is to consider a removal under 28 USC § 1442(a)(1) on a motion to remand. Plaintiffs argue for a narrow application of the removal statute citing Matheson v. Progressive Speciality Insurance Company, 319 F.3d 1089 (9th Cir. 2003), Gaus v. Miles, Inc., 980 F.2d 564 (9th Cir. 1992), and Alsup v. 3-Day Blinds, 435 F.Supp. 2d 838 (S.D.Ill 2006). Reliance submits that the Ninth Circuit has indicated that a liberal standard is to be applied in favor of removal on the basis of federal officer citing Durham v. Lockheed Martin Corporation, 445 F.3d 1247 (9th Cir. 2006).

2) The application of the holding in In re Hawaii Fed. Asbestos Cases, 960 F.2d 806 (9th Cir. 1992) with respect to determining military equipment that is eligible for the military contractor defense. Plaintiffs argue that to qualify for military contractor immunity Reliance must and does not establish that the equipment in question was not available to commercial users. Reliance argues that the opinion in In re Hawaii is consistent with the Supreme Court's holding in Boyle v. United Technologies Corporation, 487 U.S. 500 (1988) in that the thrust of the first prong of the Boyle analysis is that the equipment at issue be developed for the government with the government making involved judgments as to the design and manufacture (as opposed to the equipment at issue being developed for commercial users and the government purchasing it after the fact because it coincidentally filled a need for the military). Reliance argues that its removal petition and supporting papers establish that the equipment in question were designed and manufactured with the U.S.

government controlling the process, carefully considering and approving every plan and part, and making involved judgments as to the design and manufacture of all equipment, including motors and associated switchgear and controllers that were installed on board United States Navy vessels.

3) Whether the proffered evidence of Reliance to support the removal, the declaration of Thomas F. McCaffery, contains sufficient foundation to meet each prong of the Boyle test and therefore support Reliance's removal of this matter to federal court. Plaintiffs rely on Snowdon v. A.W. Chesterton Company, et al., 366 F.Supp.2d 157 (D.Me. 2005) and Hilbert v. McDonnell Douglas Corp., et al., 529 F.Supp.2d 187 (D. Mass. 2008) in urging this Court to reject Reliance's proffered declaration. Reliance submits that there is sufficient foundation for the opinions in the declaration at issue, that Snowdon and Hilbert should be distinguished from the facts of this case, and that Machnik v. Buffalo Pumps Inc., 506 F.Supp.2d 99 (D.Conn 2007) is a much better guide on this issue if this Court is interested in considering opinions from District Courts outside the Ninth Circuit.

### III. ARGUMENT

**A. CONTRARY TO PLAINTIFFS' ASSERTIONS OF THE LAW, THE STATUTE FOR FEDERAL OFFICER REMOVAL IS TO BE LIBERALLY CONSTRUED IN FAVOR OF REMOVAL.**

Plaintiffs claim that "the removal statute must be construed in favor of remand" (Plaintiff's Memo at 6:1-12). But Plaintiffs' assertion of law is incorrect. In an attempt to support this incorrect statement of law Plaintiffs initially cite Matheson v. Progressive Specialty Insurance Company, 319 F.3d 1089, 1090 (9th Cir. 2003) and Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Both Matheson and Gaus are cases where removal was evaluated under diversity and amount in controversy pursuant to 28 U.S.C. § 1332. Neither court reviewing the Matheson or Gaus cases considered the standard for removal under 28 U.S.C. § 1442 (federal officer removal) which is the basis for removal in the instant case. Id.

Plaintiffs also rely on <u>Alsup v. 3-Day Blinds</u>, 435 F.Supp.2d 838, 843 (S.D.Ill. 2006) which is an opinion from the District Court for the Southern District of Illinois. What Plaintiffs fail to cite, discuss or reference anywhere in their moving papers is the Ninth Circuit's direction and opinion on this exact issue in <u>Durham v. Lockheed Martin Corporation</u>, 445 F.3d 1247 (9th Cir. 2006).[1] In <u>Durham,</u> at page 1252, the Ninth Circuit flatly rejects Plaintiffs' assertion of the law on this issue:

> The district court began its analysis of this question by noting that "[r]emoval statutes are to be strictly construed, and any doubts as to the right of removal must be resolved in favor of remanding to state court." As to section 1441 removals, the district court is correct, <u>see</u> <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir.1992). (per curiam), but we do not interpret our jurisdiction under section 1442 so strictly. Congress passed the federal officer removal statute to protect the federal government from South Carolina's attempt to nullify federal tariff laws in the 1830s. <u>See</u> <u>Gay v. Ruff</u>, 292 U.S. 25, 32, 54 S.Ct. 608, 78 L.Ed. 1099 (1934.). And the Supreme Court has mandated a generous interpretation of the federal officer removal statute ever since: "It scarcely need be said that such measures are to be liberally construed to give full effect to the purposes for which they were enacted." <u>Colorado v. Symes</u>, 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932). The Supreme Court "has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).' " <u>Arizona v. Manypenny</u>, 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (quoting <u>Willingham v. Morgan</u>, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)). And the command to interpret section 1442 liberally hasn't come only from the Supreme Court. When the Court held that federal agencies didn't have any removal rights under a prior version of section 1442, Congress amended the statute to reverse the decision. See Int'l Primate Prot. <u>League v. Adm'rs of Tulane Educ. Fund</u>, 500 U.S. 72, 76, 79 n. 5, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991); Federal Courts Improvement Act of 1996. Pub.L. No. 104-317, § 206, 110 Stat. 3847, 3850.
>
> We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal. And for good reason. As Judge Friendly wrote, "[s]ection 1442, although dealing with individuals, vindicates also the interests of government itself; upon the principle that it embodies 'may depend the possibility of the general government's preserving its own existence.' "

---

[1] This omission is not only alarming as a failure to cite clear direction on the issue from the Ninth Circuit but is surprising as Plaintiffs' counsel in this matter was also counsel for plaintiff in the Durham case and made the argument that was rejected by the Ninth Circuit.

> Bradford v. Harding, 284 F.2d 307, 310 (2d Cir.1960) (quoting Tennessee v. Davis, 100 U.S. 257, 262, 25 L.Ed. 648 (1879)). Davis explains that the government "can act only through its officers and agents, and they must act within the States. Davis, 100 U.S. at 263, 25 L.Ed. 648. Federal government officers and their agents occasionally get into trouble when they act within the States-whether they're enforcing unpopular tariffs in South Carolina in the 1830s, killing recalcitrant moonshiners in self-defense in Tennessee in the 1880s, or exposing servicemen to asbestos to make military aircraft in the 1970s. If the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf.

Id. at 1252-1253.

In Durham, the Ninth Circuit makes it very clear that section 1442 is to be interpreted broadly in favor of removal and the language of the Court as set forth in the opinion leaves no room for reasonable disagreement or misunderstanding on this issue. Plaintiff's assertion to the contrary is incorrect and should be rejected.[2]

Furthermore, the Supreme Court has stated that when removing a case under section 1442, "[w]e therefore do not require the officer to virtually 'win his case before he can have it removed.'" Jefferson County v. Acker, 527 U.S. 423, 431 (1999) (citation omitted). All that is required is that the removing officer presents a "colorable federal defense" to justify the removal. Id. In fact, in Jefferson County, the Supreme Court ultimately rejected the respondents' claims for federal officer immunity while holding that the matter was still properly removed to federal court for evaluation of the proffered defense as it was a "colorable federal defense." Id.

**B. RELIANCE PRESENTS A COLORABLE FEDERAL DEFENSE.**

Plaintiffs suggest that Reliance's removal petition and supporting papers fail to present a colorable federal defense, in this case military contractor immunity. Plaintiffs claim that, to properly remove this matter, Reliance is obligated to establish that the Navy equipment in

---

[2] Similarly, Plaintiff's unsupportable allegation that the removal sought in this case by Reliance is a tactic to delay this matter from resolution should be rejected as well. Plaintiffs provide no facts or evidence to support this allegation while again citing a diversity-removal case. Reliance seeks a federal forum for evaluation of its military contractor immunity defense, which is its right under the United States Code and controlling case law.

question was not commercially available and that Reliance is obligated to include military specifications or declarations of military inspectors. Further, Plaintiffs argue that the sworn declaration of Thomas F. McCaffery, a retired Commander in the United States Navy and member of the Society of Naval Architects and the Marine Engineers lacks the necessary foundation for his opinions and statements that the United States Navy was involved with and controlled the design and manufacture of all motors and related switchgear and controllers that were made for the United States Navy and installed aboard Navy vessels.

### 1. In Re Hawaii is consistent with Boyle and requires that the government be involved with the design of the product as opposed to purchasing an already available product that was not designed for military use.

The test set forth in Boyle v. United Technologies Corporation, 487 U.S. 500, 511 (1988), contains three straightforward prongs: 1) that the United States approved reasonably precise specifications for the equipment in question; 2) The equipment conformed to those specifications; and 3) that the contractor warned the United States about any dangers in the use of the equipment that were known to the contractor but not to the United States. Plaintiff argues that Reliance's removal runs afoul of the holding in In Re Hawaii Fed. Asbestos Cases, 960 F.2d 806 (9th Cir. 1992). In Re Hawaii reviewed summary judgments granted on military contractor immunity grounds where the product in question was pipe insulation that was developed independently of the United States government by private civilians for use in the private sector. Id. at 811. The court specifically found that the "products have not been developed on the basis of involved judgments made by the military but in response to the broader needs and desires of the end-users in the private sector." Id. The United States Military simply purchased a product already on the market that had not been developed with any military input or purpose but just happened to fit military specifications and was commercially available. In fact, by comparison, the U.S. military was a not a major consumer of the product. Id. at 811-812. Based on these facts, the pipe insulation considered in In Re Hawaii failed the first prong of the Boyle test in that the United States did not approve nor was it involved in the design/specification process the led to the manufacture of the product.

In contrast to the pipe insulation that was at issue in In Re Hawaii, this case involves military designed and approved motors, switchgear and controllers that were designed for specific military (Navy) use with the government making involved judgments and approving all plans and parts. In support of this assertion, Reliance has produced the Declaration of Thomas F. McCaffery, a retired Commander in the United States Navy. Declaration of Thomas F. McCaffery, July 5, 2008, at ¶¶ 8-12, 14-15. ("McCaffery Dec."). Commander McCaffery's declaration makes clear that the U.S. Military was involved and approved the design including all drawings, plans, materials and parts of the motors and other components in question. Id. In fact, every facet of the design and manufacture of any piece of equipment supplied by Reliance to the United States Navy was controlled by the Navy. Id. at 15.

**2. Thomas F. McCaffery has both personal knowledge and expertise of the fact that the United States Government approved reasonably precise specifications relating to the military equipment in question and that the motors conformed to those specifications.**

Plaintiff claims that because the detailed drawings of the motors that were approved by or provided by the U.S. Navy are not included in the removal petition that the declaration of Commander McCaffery should be rejected. There is no evidence before this Court that such drawings have been preserved nor has there been any identification by plaintiffs of a specific motor that would allow such drawings to be located and produced. What this Court does have to review is the sworn statement of a former Navy Commander who has specialized expertise regarding United States Navy ship design, development, maintenance, construction and repair, and the level of control and supervision exercised by the Navy over the design, manufacture and installation or equipment aboard United States Navy vessels. McCaffery Dec. at ¶¶ 4-12; 14-15. In fact, the statements contained in the McCaffery Declaration are better supported and more detailed than those that the court in Machnik found were sufficient to support a removal under section 1442. Machnik v. Buffalo Pumps, 506 F.Supp.2d 99, 103-104 (D.Conn.2007).

The Machnik opinion is directly on point with this case. In Machnik, General Electric (GE) was pursued in a state court action for products it manufactured and supplied to the United States Navy for use on Navy Vessels. GE joined with another defendant in removing the case to

1   federal court on the basis of 28 U.S.C. § 1442(a)(1) for military contractor immunity. Id. at 102.
2   Plaintiff moved the district court to remand the case back to the state. The federal court hearing
3   the remand motion recognized that "removal should not be frustrated by a narrow, grudging
4   interpretation" (citation omitted) and that the removing party is not required to establish that he
5   will prevail on the case for a removal to be proper. Id.

6   In Machnik, GE presented the court with the Affidavit of a retired Navy Rear Admiral
7   who had knowledge of the contracts that existed between the Navy and its contractors. Id. at
8   103. The Affidavit set forth that the Navy exercised complete control over every aspect of all
9   equipment supplied by contractors and that any such equipment not in total compliance with the
10  Navy's specifications would have been rejected. Id. The Machnik court found that the Rear
11  Admiral's Affidavit was sufficient to establish that a colorable federal defense existed as to GE
12  under the first two Boyle prongs. Id. The Affidavit did not attach any of the military
13  specifications or other documents that were referenced in the body of the declaration and sets
14  forth evidence of the involvement of the U.S. Government in the design and manufacture of
15  equipment supplied by its contractors for use on Naval vessels very generally as to the
16  equipment and contractors in question. See Affidavit of Admiral Ben J. Lehman attached as
17  Exhibit "A" to the Declaration of Evan C. Nelson in support of Reliance's opposition to
18  Plaintiff's Motion for Remand. See also Reliance's Request for Judicial Notice.

19  In the instant case the evidence is virtually identical to that in Machnik. The Rear
20  Admiral in Machnik was not a GE representative and gave general statements about unidentified
21  equipment supplied by unidentified contractors to the U.S. Navy, here Reliance presents the
22  declaration of Commander McCaffery who offers similar statements regarding the general types
23  of products that Plaintiffs have identified as Reliance equipment. Plaintiff does not seem to
24  dispute that McCaffery's Declaration confirms that the motors, controllers and switchgear in
25  question were subject to and necessarily conformed to the reasonably precise specifications.
26  McCaffery Dec. at ¶¶ 10-12; 14-15. Similarly, Plaintiff does not seem to argue that Reliance
27  failed to warn the United States about any danger in the use of the equipment in question known
28

8
OPPOSITION TO MOTION TO REMAND
CASE NO. C 08-3316 PJH

SFOiManage/074908/000541/160213/1
011443.000010.160429.1

to Reliance but not to the United States as the United States Navy had state of the art knowledge on the issue. McCaffery Dec. at ¶ 16. "In fact, the U.S. Navy possessed information and knowledge superior to, if not greatly superior to, that of Reliance on issues of the industrial hygiene aspects of asbestos and asbestos medicine, including any risks involved with use of asbestos containing components or materials in association with motors or other Navy equipment. Id. at ¶ 16.

Plaintiffs rely on Snowdon v. A.W. Chesteron Company, et al., 366 F.Supp.2d 157 (D.Me.2005) and Hilbert v. McDonnell Douglass Corp., 529 F.Supp.2d. 187 (D. Mass. 2008) in an attempt to persuade this Court that Reliance's removal petition was somehow insufficient. Plaintiff is incorrect as these cases are clearly distinguishable from the present matter.

In Snowdon, the court's "concern" was that the removing party had available key and crucial documents upon which the removal was based but opted not to provide these documents to the court. Snowden, 366 F.Supp.2d at 165. Here, Reliance establishes a colorable claim based on the knowledge and expertise of Commander McCaffery. Additionally, there is no evidence before this Court that Reliance is intentionally withholding drawings or specifications. In fact, it is impossible to search for or obtain specific drawings without a clear identification of a specific piece of equipment by Plaintiffs.

In Hilbert, the court was evaluating a removal solely in the context of a state failure to warn claim. Hilbert, 529 F.Supp.2d at 192. Here, Reliance has removed a design defect claim as well as a failure to warn claim. As such, the analysis performed in Hilbert would not be applicable to each basis for removal in the instant case, and either claim justifies this removal.

Moreover, Federal Rules of Evidence 702 through 704 allow for the specific expert testimony submitted with Reliance's removal petition. Rule 702 allows expert testimony in the form of technical or other specialized knowledge that is based on the expert's knowledge, skill, experience, training or education. Fed. R. Evid. 702. Commander McCaffery has specific technical and specialized knowledge, experience, training and education regarding the military specifications governing Navy equipment procurement and the oversight and control exercised

by the United States Navy throughout the process of designing, manufacturing, testing, installing and approving such military equipment for use on board United States Navy vessels.

Rule 703 specifically allows expert testimony based upon facts or data that are of a type reasonably relied upon by experts in the particular field, even if the facts and data are not admissible as evidence. Fed. R. Evid. 703. Accordingly, whether the applicable military specifications are admissible or were provided with the removal petition should be of no consequence, so long as those military specifications are reasonably relied upon by an expert providing technical or specialized opinion testimony concerning the military specification process involving the design, manufacture and approval process for equipment installed aboard United States Navy vessels. It is beyond reasonable dispute that the facts and data underlying Commander McCaffery's opinions, including the numerous enumerated precise military specifications applicable to the type of Navy equipment supplied by Reliance, are reasonably relied upon by experts in this field.

### 3. Plaintiffs' request for sanctions is misplaced and should be denied.

As the Ninth Circuit ruling in <u>Durham</u> makes clear, where there is an objectively reasonable basis for removal, sanctions are improper. <u>Durham</u>, 445 F.3d at 1251, 1254. Because this removal should be sustained, there exists an objectively reasonable basis for the removal and sanctions would be improper.

### IV. CONCLUSION

Based on the points and authorities set forth above, this Court should deny Plaintiffs' Motion to Remand as Reliance has established that it has a colorable claim for military contractor immunity.

DATED: August 27, 2008                         TUCKER ELLIS & WEST LLP

By: _____
Evan C. Nelson
Attorneys for Defendant
RELIANCE ELECTRIC COMPANY