

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
RICHARD M. GRANT, ESQ., S.B. #55677
BRAYTON❖PURCELL LLP
222 Rush Landing Road
PO Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 Fax

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARRY LEMASTER and CAROLYN LEMASTER | No. C 08-3316 PJH |
| Plaintiffs, | PLAINTIFF'S REPLY TO RELIANCE ELECTRIC COMPANY'S OPPOSITION TO MOTION TO REMAND |
| vs. | |
| ALLIS-CHALMERS CORPORATION PRODUCT LIABILITY TRUST, et al. | Date: September 17, 2008 Time: 9:00 a.m. Courtroom: 3, 17th Floor |
| Defendants. | |

**I.**

**INTRODUCTION**

This case presents to the Court the question of whether an experts mere opinion based upon hearsay and not his own personal knowledge is sufficient to meet the burden of proof required of a defendant in an action removed to this Court on the basis of an asserted "military contractor" defense.   Defendant Reliance Electric Company ("Reliance") admits that Thomas McCaffery is "an expert providing technical or specialized opinion testimony concerning the military specification process" and that the data in his declaration underlie his "opinions". (Defendant's Opposition to Motion to Remand, page 10, lines 7-13)

1    Defendant "overlooks the fact that it bears the burden of proof on the appropriateness of

2  this court asserting federal jurisdiction and that the court itself has a certain interest in seeing

3  the actual documents so that it need not deign to enter findings based upon an affiant's hearsay,

4  whether or not it is offered under penalty of perjury." *See, Snowdon v. A.W. Chesterton*

5  *Company*, 366 F.Supp.2d 157, 164, D. Maine, 2005.

6    Ignoring or minimizing its burden of establishing federal jurisdiction and its military-

7  contractor defense, defendant responds to plaintiff's motion to remand by continuing to assert

8  that the United State Military exercised "direct and detailed"control over the materials used in

9  its product. Their contentions are entirely unsupported by any evidence, however, other than

10  the McCaffery declaration, an opinion based on hearsay and speculation, without proper

11  foundation. There is simply no evidence, other than this naked opinion, that the government, in

12  any fashion, directed defendant Reliance to utilize asbestos in its product. The McCaffery

13  declaration, which simply alludes to the content of regulations and specifications is, in the

14  absence of the documents themselves, nothing more than hearsay and is not entitled to any

15  weight. *Snowdon*, supra, 366 F. Supp.2d 165

16    Likewise, Defendant's continued claims that the military would preclude any warnings

17  of hazardous materials is supported only by bold, bald and unfounded assertions, and is without

18  merit.

19                          **II.**

20                       **ARGUMENT**

21    **A.    There Was a Duty to Warn**

22    Defendant claims The United States Navy was well aware of any health hazards relating

23  to the use of asbestos -related products dating back to the "early 1940's" ( McCaffery

24  Declaration ¶16)  and that the Navy had "state of the art knowledge concerning the potential

25  risks or hazards relating to work with or around asbestos containing materials and products."

26  (McCaffery Declaration, ¶16)  However, Occupational Health Hazard Release No. 29 (Exhibit

27  C to Declaration of Richard M. Grant) distributed by the Department of the Navy in 1961 belies

28  defendant's contentions, being noteworthy for what it does not contain. Out of the entire 60

1   pages of text, there are just 17 lines that address "asbestos dust" and "asbestos". Moreover, the
2   only mention of a study was one begun in 1958 and it is stated that "at that time" there was only
3   one case of an employee receiving compensation for asbestosis. There is absolutely no warning
4   of the danger of asbestos as a carcinogen, no warning that asbestos may cause lung cancer and
5   no mention whatsoever that asbestos causes mesothelioma. Hardly a testimonial to the Navy's
6   superior knowledge, or even actual knowledge of the dangers of asbestos-containing products.

7       The paper on Industrial Hygiene and the Navy in National Defense (Exhibit D to Grant
8   Declaration) sheds light on the allegation that the Navy was "well aware" of health hazards
9   related to the use of asbestos-containing products dating back to the 1940's. This supposed state
10   of the art knowledge was contained in just three paragraphs of the 14 page paper. While stating
11   that asbestos is a "potential occupation disease hazard", the study concluded that "no cases of
12   asbestosis were found" in a survey of workers after a maximum period of exposure of seventeen
13   years. That's it. No mention of other diseases. No mention of other studies that at the time
14   acknowledged the severe hazards of asbestos exposure. Defendants's declarations and
15   speculations simply cannot support a conclusion that the Navy had superior knowledge to that
16   of defendant Reliance Electric Company regarding the dangers of asbestos.

17       Reliance says, however, that even if it wanted to supply warnings regarding asbestos, it
18   would have been precluded by the military. Again, there is no evidence to support such a claim
19   other that the same speculation and unfounded statements based on hearsay (indeed, if based on
20   anything). Again, plaintiff supplies specific evidence to the contrary. In the Uniform Labeling
21   Program-Navy, published in 1956 (Exhibit B to Grant declaration), it is specifically provided
22   that its "instruction apply(ing) to the labeling of all hazardous materials throughout the Naval
23   Establishment wherever distribution of hazardous materials is made to the actual consumer...is
24   not intended to govern: a) The type of labels to be affixed by the manufacturer. These are
25   governed by State and Federal Law and regulations..." Accordingly, defendant was free to
26   include warnings which were not dictated by the Navy. (See *Fortier v. Ampco-Pittsburg Corp.*,
27   U.S.D.C. Conn. 2007, attached as Exhibit E to Grant declaration)
28   ///

1  Also, Military Specification MIL-15071D - "Manual, Service (Instruction Books) for

2  Shipboard Electrical and Mechanical Equipment" (attached as Exhibit I to Grant Declaration)

3  provides: "The intent is to accept the manufacturer's commercial type of manual or one

4  prepared in accordance with his commercial practice whenever it is roughly equivalent to the

5  detail requirements included herein." (Sec. 1.1)

6  To be included in any such manual are "Notes, cautions and warnings": "Notes,

7  cautions and warnings should be used to emphasize important and critical instructions." (Sec.

8  3.8.6) Although to be used sparingly as is consistent with need, this Milspec states that cautions

9  and warnings should precede the applicable instruction and shall be selected in accordance with

10  the following definition:

11  (c) "WARNING" - Operating procedures, practices, etc., which will result in

12  personal injury or loss of life if not correctly followed. (Sec. 3.8.6)

13  Thus, rather than prohibiting warnings, the Navy acknowledged that warnings "should

14  be used". Defendant was not precluded by the Navy from issuing warnings about the hazards of

15  asbesotos. Whether they chose to or not is the subject of this lawsuit.

16  **B.    There Is No Showing That the Government Required the
Use of Asbestos in the Products of Defendant**

17

18  Plaintiff asserted in its motion that "declaration testimony, which simply describes the

19  content of the regulations and specification is, in the absence of the documents themselves,

20  nothing more than hearsay and is not entitled to any weight" (*Snowdon v. A.W. Chesterton Company*, 366 F. Supp. 2d, 157, 164, D. Me (2005)

21

22  There is an absence of proof which could establish that a federal officer required the use

23  of asbestos in the design and manufacture of defendant's electrical equipment.

24  The declaration of McCaffery is insufficient to support the claim of Reliance that it

25  designed and manufactured the electrical equipment pursuant to the detailed control and

26  direction of the U.S. Navy. There is simply no showing that the Navy required the use of

27  asbestos in Reliance's product.

28  Reliance states that it has raised a "colorable federal defense" of having acted under a

federal officer or agency. However, the "colorable claim" standard applies only to the

1 | presentation of a federal defense, <u>not the causal requirement</u>. *Mesa v. California*, 489 U.S.
2 | 121,132 (1989), emphasis added.   In order to remove to federal court, Reliance must set forth
3 | evidence showing that it did, in fact, act under a federal officer, a burden that Reliance has not
4 | satisfied by the submission of a declaration based upon hearsay, speculation and lacking
5 | foundation. (See *Good v. Armstrong World Industries, Inc.*, 914 F. Supp. 1125, 1129, (E.D. Pa.,
6 | 1996)

7 |     The necessary "causal requirement" is that the government actually specified and
8 | required the use of asbestos in the contractor's product. Three unreported cases decided in this
9 | district are in accord that there must be a showing that the government actually required the use
10 | of asbestos in defendant's products. (*Groombridge v. Asbestos Defendants*, U.S.D.C., N. Dist.
11 | CA, No. C 00-01654 MMC, 2000;  *Pippens v. Asbestos Defendants*, U.S.D.C., N. Dist. CA, No.
12 | C 00-1356 WHA, 2000; *Pippins v. Atlas Turner, Inc.*, U.S.D.C., N. Dist. CA., No. C 03-3006
13 | WHA; attached as Exhibits F, G & H to Grant Declaration)

14 |     There must be more than just specifications, even if otherwise precise.  It is incumbent
15 | upon defendant to establish that asbestos was a required component.  Defendant has failed to
16 | provide any such proof, either testimonial or documentary, that would allow a conclusion that
17 | the government mandated the use of asbestos in the products of defendant Reliance. (Compare
18 | this fact with Table I - Materials for pumps", pg. 18 of Mil-P-17840B(SHIPS). ( Exhibit A to
19 | Grant Declaration) wherein asbestos is indeed specified as the material to be used in the "casing
20 | gaskets" of certain pumps.)

21 |     **C.**    <u>**Defendant Has Not Sustained its Burden of Proof re Military Equipment**</u>

22 |     As stated in plaintiffs initial Memorandum of Points and Authorities, defendant has the
23 | burden of proof on each and every issue showing that removal was proper. Defendant must
24 | therefore establish that its equipment, although possibly conforming to Navy specifications, is
25 | not also readily available, in substantially similar form, to commercial users.  Defendant
26 | continues to fail to provide any evidence on this issue, and thus fails to sustain its burden of
27 | proof.

28 | ///

1

    **D.**    *Machnik v. Buffalo Pumps, Inc.*, **Is Distinguishable, Inapposite and an Aberrant Opinion**

2

        Defendant primarily relies on the case of *Machnik v. Buffalo Pumps, Inc.* 506 F.Supp.2d

3

99, (D. Conn., 2007) as authority for its contention that it need not provide admissible

4

documentary evidence to support its expert's opinion. However, *Machnik* is not applicable.

5

        Whereas in Machnik the court emphasized that affiant Lehman set forth specific time

6

periods in which he worked and therefore had "personal knowledge of the contracts that existed

7

between the Navy and its contractors during the period of Machnik's Navy service", in the case

8

at bench the declaration of Thomas McCaffery fails to disclose any time periods whatsoever

9

that relate to plaintiffs work or exposure to asbestos. Accordingly it simply cannot be

10

concluded that McCaffery has personal knowledge of military contracts, regulations and

11

specifications in place or relevant to the time periods plaintiff worked. Moreover, defendant, as

12

set forth above, admits that McCaffery's declaration is, in reality, an expert opinion based upon

13

hearsay.

14

        Plaintiff can find no other authority which is in accord with *Machnik v. Buffalo Pumps,*

15

*Inc.*, 506 F. Supp 99, D. Conn., 2007, regarding declarations or affidavits unsupported by actual

16

documents.

17

18
        (T)his court is struck by Northrup's inability to respond to the plaintiffs' submission with an affidavit of anyone with personal knowledge as to the contracts and regulations which actually applied during the relevant period.

19
        *Hilbert v. Aeroquip, Inc.*, 486 F.Supp.2d 135, 142, (D. Mass. 2007).

        ...

20
        In light of the gross generalizations contained in the affidavit, the fact that (declarant) was not employed by Grumman or

21
Northrup Grumman during the relevant time, and the absence of any assertion to the effect that (declarant) actually reviewed

22
any relevant contracts or even had conversations with those who had personal knowledge, this court agrees that (declarant)

23
has failed 'to establish personal knowledge with regard to whether a particular type of warning was forbidden...' "

24
        *Id*, 145, citing *Nesbiet v. General Electric Co.* 399 F.Supp.2d 205, (S.D.N.Y. 2005)

25
        ...

        The conclusion that (the) affidavit is not based on his personal

26
knowledge is further supported by the absence of exemplar contracts or regulations which could confirm his otherwise

27
conclusory allegations...(Declarant's) generalized statements are insufficient to establish his personal knowledge over

28
asbestos-related warnings during the relevant period. *Id.*, at 145, citing *Nesbiet*, supra. *See, also Green v. A.W. Chesterton Co.*, 366

PLAINTIFF'S REPLY TO RELIANCE ELECTRIC COMPANY'S OPPOSITION TO MOTION TO REMAND

1            F.Supp.2d 149 (affidavit which failed to include any actual
                         regulation or specification raises real and significant concern
2                          and fails to meet defendant's burden for removal)

3         The court in *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp 2d 187 (D. Mass. 2008)

4 held:

5            On review of the evidence, there is simply no basis upon
                         which a court can conclude that a conflict existed between
6                          the federal contracts and the defendant's state-law duty to warn.
                         The defendants do not submit any non-testimonial evidence,
7                          i.e. citations to regulations or contracts, ...(and) fail to provide
                         any military specification bearing on the substance of the
8                          warnings to be provided...Their argument thus boils down to a bald ,
                         unsupported assertion...(T)hat sort of speculation
9                          is not remotely adequate." (At 202-2-3)

10

11      **E.**     **Any Doubt as to the Removability of this Matter Should Be Resolved
             in Favor of Remand.**

12         Although defendant is correct that *Durham v. Lockheed Martin Corporation* 445 F. 3d

13 1247 (9th Cir., 2006) holds that a liberal interpretation is to be given to federal officer removal

14 statutes, that opinion is actually limited to the 30 day provisions of 28 USC § 1446. Other

15 statements by the court concerning the construction of federal removal statutes are just

16 interpretations and at most dicta. In any event, the Durham opinion does not overturn or

17 contradict in any way the prior mandate of the Ninth Circuit that any doubt as to the

18 removability of a matter "should be resolved in favor of remanding a case to state court"

19 (*Matheson v. Progressive Specialty Insurance Company*, 319 F. 3d 1089, 1090 (9th Cir., 2003);

20 *Gaus v. Miles, Inc.*, 980 F. 2d 564, 566 (9th Cir. 1992)

21         Therefore, regardless of whether the statute is liberally or narrowly construed, if there is

22 any doubt as to a matter's rEMOVABILITY, the case is to be remanded to the state court.

23      **F.**     **Should the Motion to Remand Be Denied, the Case Against Reliance
             Electric Company Should Be Severed from the Other Defendants**

24
        The only potential federal claim raised in this litigation relates to Reliance's federal

25
contractor defense. All other claims are based upon state law and were appropriately brought in
26
state court. Each defendant's involvement in the events leading up to Mr. LeMaster's illness is
27
distinct, and in no way dependent on Reliance's status as an alleged "federal contractor". The
28
case will proceed much more rapidly in state court, thereby giving Mr. LeMaster the

1    opportunity to participate in the trial.[1]  There is no reason for the remaining defendants to await

2    the resolution of claims against one defendant.  Keeping the state law claims against these

3    defendants in federal court will in no way increase judicial efficiency and expediency.  Rather

4    the resolution of the claims against the state defendants may increase the speed by which the

5    claims against one alleged federal defendant may be resolved.  *Hilbert v. Aeroquip Inc.,* 486

6    F.Supp.2d 135, 149, D. Mass., 2007

7         In the event plaintiff's motion to remand is denied, the claims against the remaining

8    defendants should be severed and remanded.

9                       **CONCLUSION**

10         Defendant failed to support its removal with proper facts or foundation. It has not

11    established a colorable federal defense nor has it established a causal connection between the

12    acts done pursuant to the federal contract and the plaintiff's injury.  Removal is not appropriate

13    in this case and the matter should be remanded to state court.

14                     Respectfully submitted,

15    Dated: September 3, 2008            BRAYTON❖PURCELL LLP

16

17                     By:

18                        Richard M. Grant

                         Attorneys for Plaintiff

19                        HARRY LeMASTER and CAROLYN

                       LeMASTER

20

21

22

23

24

25

26

27

28

---

[1]As noted in plaintiff's initial Points and Authorities, "the attempted removal is a common tactic for a defendant seeking to delay or deny plaintiff's rights to a trial on the merits of their state claims," attempting to avail itself of the "glacial pace" of the MDL process.